JAMES BACH and SHARON BACH, Claimants-Appellees,
v.
LAWRENCE M. STOGDELL and MAS BUILDERS, LLC, Respondents-Appellants, and
WILLIAM M. GHEEN, Respondent-Appellee
No. 28652.
Intermediate Court of Appeals of Hawaii.
February 27, 2009.
On the briefs:
Denise M. Hevicon, for Respondents-Appellants.
James Bach, Sharon Bach, Claimants-Appellees pro se.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA and FUJISE, JJ.
Respondents-Appellants Lawrence M. Stogdell (Stogdell) and MAS Builders, LLC (MAS) appeal from the Final Judgment filed on June 18, 2007 in the Circuit Court of the First Circuit (circuit court).[1] The circuit court entered judgment in favor of Claimants-Appellees James and Sharon Bach (collectively, the Bachs) and against Stogdell, MAS, and Respondent-Appellee William M. Gheen (Gheen) (collectively, Respondents) pursuant to the court's "Order Confirming Arbitration Award Filed January 24, 2007" (Order Confirming Award), also filed June 18, 2007.
In the Order Confirming Award, the circuit court granted the Bachs' January 24, 2007 Motion for an Order Confirming Arbitration Award (Motion to Confirm Award). The circuit court found that the Bachs were entitled to $122,145, less $30,000 paid by Gheen to the Bachs pursuant to a Settlement Agreement entered into by the Bachs and Respondents, for a total of $92,145, plus interest accruing from the date of judgment. The circuit court also found that the Bachs were entitled to an award of $9,235.50 in reasonable attorneys' fees and costs, plus interest accruing from the date of judgment.
On appeal, Stogdell and MAS argue that the circuit court erred by
(1) confirming the Stipulated Arbitration Award (Arbitration Award) and entering the judgment because the Arbitration Award did not resolve the Bachs' claims against Charles Mosher (Mosher) and, thus, was not final;
(2) confirming the Arbitration Award because it was executed as a security for payment of the Settlement Agreement and Release (Settlement Agreement); and
(3) failing to find that the Bachs, by accepting a partial payment of the settlement amount, elected to proceed with the Settlement Agreement and waived
(a) their right to have the Arbitration Award confirmed and
(b) the Arbitration Award's "time is of the essence" clause.
I. BACKGROUND
The undisputed facts in this case are as follows. Stogdell, Gheen, and Mosher were members of a joint venture, which constructed a single-family residence in Hawai'i Kai that the Bachs purchased in 2002 (the Residence). Shortly after the Bachs purchased the Residence, a leak developed in the ceiling. In June 2004, Stogdell and Gheen hired MAS to fix the leak; however MAS's attempts were unsuccessful. The Bachs hired their own contractor and paid $122,144.60 to have the leak fixed.
On November 3, 2005, the Bachs commenced an arbitration against Stogdell, Gheen, and Mosher, claiming that the Bachs were owed a reimbursement of $122,144.60 for the repair costs. Early in the arbitration, the Bachs dismissed Mosher without prejudice. In 2006, MAS was joined as a party to the Arbitration pursuant to an indemnification agreement.
After a hearing on a motion for summary adjudication of issues in July 2006, the Bachs and Respondents began settlement discussions. During discussions, Respondents stated that as a condition of settlement, Mosher would have to be brought back into the case as a party so that Respondents could pursue contribution from him. Bach agreed to the condition and served Mosher with a Notice of Arbitration. However, there is no evidence in the record on appeal that Mosher participated in the subsequent arbitration proceedings.
By September 27, 2006, the Bachs and Respondents had executed the Settlement Agreement and Arbitration Award. The Settlement Agreement provides in part:
1. [Respondents] shall jointly pay to [the Bachs] the sum of $70,000... on or before December 31, 2006. Time is of the essence.
2. As security for the payment of the $70,000, [the Arbitration Award]... shall be provided to [the Bachs].
3. In the event that payment is not made as required by Paragraph 1:
a. [The Bachs] may have the [Arbitration Award] confirmed as a Judgment in the [circuit court] and to execute thereon;
b. [Respondents] shall not oppose confirmation other than on the basis that they in fact paid $70,000 by December 31, 2006 as required by paragraph 1, above; and
c. STOGDELL and MAS shall indemnify GHEEN for the difference between the amount of this Settlement and the amount of the [Arbitration Award].
The Settlement Agreement also provides the following with regard to how Respondents, and perhaps Mosher, would divide responsibility for the $70,000 owed to the Bachs:
8. As between [Respondents] and [Mosher], to the extent the Arbitrator and/or [Mosher] agree that [Mosher] is properly a part of the proceedings  it is agreed that their relative shares of the $70,000 to be paid to [the Bachs] shall be determined in a simplified arbitration hearing, upon such terms as the parties and the Abitrator may agree. It is understood that this division of responsibility is not binding on [the Bachs].
In the Arbitration Award, the Bachs and Respondents stipulated and agreed to the following:
[A]n award may enter in favor of [the Bachs] and against [Respondents], jointly and severally, in the amount of $122,145.
... [Respondents] hereby waive any right or opportunity to contest confirmation of this [Arbitration Award] as a judgment or its amount, or to defend against its enforcement on any factual, legal, or equitable basis (other than the basis set forth in that separate [Settlement Agreement] between the parties [)] .
... [T]he amount by which this [Arbitration Award] exceeds $70,000 (i.e., $52,145) is not a penalty or forfeiture, but the parties agree, and the Abitrator finds based on the evidence submitted by [the Bachs], that judgment in the amount of $122,145 is reasonable in the circumstances, and represents [the Bachs'] actual damages and the amount actually expended by [the Bachs] to repair alleged construction defects.
In an Arbitrator's Award dated November 13, 2006, the Arbitrator decided that Gheen and Stogdell would each pay $35,000 of the $70,000 owed to the Bachs and MAS would pay nothing.
Prior to December 31, 2006, Gheen paid the Bachs $30,000, which payment the Bachs accepted. Stogdell and Gheen failed to pay the Bachs the remaining $40,000 by December 31, 2006, as provided for in the Settlement Agreement.
In their Motion to Confirm Award, the Bachs argued that pursuant to the terms of the Arbitration Award, the circuit court could enter judgment against Stogdell and Gheen for the full amount of the repair costs, or $122,145, less the $30,000 Gheen already had paid. The Bachs claimed that they were entitled to an order confirming the award, pursuant to Hawaii Revised Statutes (HRS) § 658A-22 (Supp. 2008).[2]
On February 7, 2007, Stogdell and MAS filed an opposition memorandum to the Motion to Confirm Award. The arguments therein are substantially similar to Stogdell and MAS's arguments on appeal. Gheen joined in the opposition memorandum on February 8, 2007.
On February 12, 2007, the Bachs filed a reply to the opposition memorandum.
After a hearing, the circuit court entered on June 18, 2007, the Order Confirming Award and Final Judgment. Stogdell and MAS timely appealed.
On November 26, 2007, the Bachs filed a "Satisfaction of Final Judgment," in which they stated that the judgment had been fully satisfied. The Satisfaction of Judgment was made part of the record by a motion filed and granted on February 26, 2008. The motion stated that Gheen had satisfied the judgment via personal check in the amount of $98,020.92.

II. STANDARDS OF REVIEW
"We review the circuit court's ruling on an arbitration award de novo, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks, citation, and brackets omitted).
Judicial review of an arbitration award is limited by the following precepts:
First, because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.
Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. An arbitration award may be vacated only on the four grounds specified in HRS § 658-9 and modified and corrected only on the three grounds specified in HRS § 658-10. Moreover, the courts have no business weighing the merits of the award.
Third, HRS §§ 658-9 and -10 also restrict the authority of appellate courts to review judgments entered by circuit courts confirming or vacating the arbitration awards.

Daiichi Hawai'i Real Estate Corp. v. Lichter, 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003) (internal quotation marks, brackets, ellipses points, and citations omitted).
Schmidt v. Pac. Benefit Servs., Inc., 113 Hawai'i 161, 165-66, 150 P.3d 810, 814-15 (2006).
"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Estate of Tayares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting State v. Kotis, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).
A COL is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.
Chun, 106 Hawai'i at 430, 106 P. 3d at 353 (internal quotation marks, citations, and brackets omitted) (quoting Ponce, 105 Hawai'i at 453, 99 P.3d at 104).

III. DISCUSSION
Stogdell and MAS argue the circuit court erred in the following ways.

A. Finality of Arbitration Award
Stogdell and MAS contend the circuit court erred by confirming the Arbitration Award and entering a final judgment because the Arbitration Award did not resolve the Bachs' claims against Mosher and, thus, was not final.
The principle is well-settled that
courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous. In fact, contractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech. The court should look no further than the four corners of the document to determine whether an ambiguity exists.
United Public Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Hawai'i 127, 140, 149 P.3d 495, 508 (2006) (quoting State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999)).
In the instant case, paragraph eight of the Settlement Agreement provides:
8. As between [Respondents]  and [Mosher], to the extent the Arbitrator and/or [Mosher] agree that [Mosher] is properly a part of the proceedings  it is agreed that their relative shares of the $70,000 to be paid to [the Bachs] shall be determined in a simplified arbitration hearing, upon such terms as the parties and the Abitrator may agree. It is understood that this division of responsibility is not binding on [the Bachs].
We interpret this paragraph to mean that whether Mosher was properly a part of the proceedings and, if so, whether he owed the Bachs a part of the $70,000 settlement amount was to be determined by the Arbitrator in a "simplified arbitration hearing." Therefore, the Bachs and Respondents clearly agreed that any claims the Bachs had against Mosher would not be disposed of in the Arbitration Award or the main arbitration proceedings.
Further, although neither Stogdell nor MAS moved to vacate the Arbitration Award, there would have been no statutory basis for the circuit court to do so. HRS § 658A-23 (Supp. 2008) provides in relevant part:
§658A-23 Vacating award. (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
(1) The award was procured by corruption, fraud, or other undue means;
(2) There was:
(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;
(B) Corruption by an arbitrator; or
(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
(4) An arbitrator exceeded the arbitrator's powers;
(5) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
(6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.
....
(d) If the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending.
HRS § 658A-24 (Supp. 2008) provides in relevant part:
§658A-24 Modification or correction of award.
(a) Upon motion made within ninety days after the movant receives notice of the award pursuant to section 658A-19 or within ninety days after the movant receives notice of a modified or corrected award pursuant to section 658A-20, the court shall modify or correct the award if:
(1) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
(2) The arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or
(3) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.
(b) If a motion made under subsection (a) is granted, the court shall modify or correct and confirm the award as modified or corrected. Otherwise, unless a motion to vacate is pending, the court shall confirm the award.
In this case, none of the contingencies enumerated in HRS § 658A-23 or HRS § 658A-24 existed, and we find no authority in this jurisdiction providing support for Stogdell and MAS's argument on this point.

B. Arbitration Award as Security for Settlement Agreement
Stogdell and MAS argue that the circuit court erred by confirming the Arbitration Award because it was executed as a security for payment of the Settlement Agreement. They maintain that a security is designed to secure payment of an obligation, not to provide for the collection of a substantially greater amount in the event of a default, and the circuit court erred when it treated the matter as a simple confirmation of an arbitration award and entered judgment in excess of the $70,000 secured by that arbitration award.
However, Stogdell and MAS do not provide any authority that supports this argument, and we find none in this jurisdiction. Regardless of what a security is designed to do, the Settlement Agreement plainly states that the Bachs and Respondents agreed that if Respondents did not pay the Bachs the settlement amount by the December 31, 2006 deadline, "[the Bachs] may have the [Arbitration Award] confirmed as a judgment in the [circuit court] and to execute thereon." The Settlement Agreement further clearly provides that the Bachs and Respondents agreed Respondents would not oppose confirmation other than on the basis that they in fact paid $70,000 by the December 31, 2006 deadline.

C. Bachs' Acceptance of Partial Payment
Stogdell and MAS contend the circuit court erred by failing to apply the principles of contract law to the facts of the case by not finding that the Bachs, by accepting a partial payment of the settlement amount, elected to proceed with the Settlement Agreement.

1. Waiver of Arbitration Award confirmation
Stogdell and MAS maintain that the Bachs waived their right to confirmation of the Arbitration Award by accepting the $30,000 payment on or before December 31, 2006, even though $70,000 was due and owing, jointly and severally, by Gheen and Stogdell. Stogdell and MAS argue that by accepting the $30,000, the Bachs elected to accept the partial performance of the Settlement Agreement rather than consider Stogdell and MAS to be in total breach.
We can find no case law in this jurisdiction on this issue. Nevertheless, a holding of the Supreme Court of the Territory of Hawai'i in The First Trust Co. of Hilo, Ltd. v. Cabrinha, 24 Haw. 777 (Haw. Terr. 1919), suggests that in this case, the Bachs did not waive their right to confirmation of the Arbitration Award. First Trust involved a contract to purchase real estate. Id. at 778. The contract provided that the purchaser, Cabrinha, was to pay for the real estate at a rate of $50 per month, on the first day of each month, until the purchase price was paid in full. Id. The contract declared that time was of the essence and stated that if any payment was not made when due, the seller of the real estate (First Trust) had the right to enter the land and terminate Cabrinha's right of occupancy. Id. at 778 & 783. After Cabrinha made three late payments and failed to make subsequent payments, First Trust declared a forfeiture and reentered the land to remove Cabrinha. Id.
On appeal, Cabrinha argued that because First Trust sent him a statement of the amount due under the contract after he had failed to make payments, First Trust had waived all of Cabrinha's prior breaches under the contract, had treated the contract as still valid and "subsisting," and had waived the forfeiture clause of the contract. Id. at 784-85. The Supreme Court of the Territory of Hawai'i disagreed, holding:
It is true that the forfeiture clause of a contract may be waived where the party entitled to the forfeiture either by his statements or a course of conduct leads the other party to believe that he will not insist on a forfeiture. It is a general rule that mere indulgence or silence cannot be construed as a waiver unless some element of estoppel can be invoked.
It seems to be well settled that in the absence of other circumstances the fact that the vendor has indulged the vendee by accepting payments after they were due furnishes no excuse for his not meeting the subsequent payments promptly, nor will it operate to prevent the vendor from declaring a forfeiture for failure to make such subsequent payments when due.
To constitute a waiver otherwise than by express agreement there must be unequivocal acts or conduct of the vendor evincing the intent to waive. Nothing short of this will amount to a waiver.... There was no waiver in this case by express agreement.
Id. (citations omitted).
In this case, the Settlement Agreement was silent with respect to the treatment of partial payments. Clearly, the Bachs and Respondents did not expressly agree therein that the Bachs would waive their right to confirmation of the Arbitration Award by accepting partial payment from Gheen. Further, there is no evidence in the record on appeal that the Bachs demonstrated any intent to waive that right.

2. Waiver of "time is of the essence" clause
Stogdell and MAS argue that the Bachs waived the "time is of the essence" clause by accepting the $30,000 payment. Stogdell and MAS maintain that if the Bachs had intended to enforce the "time is of the essence" clause, the Bachs should have rejected the $30,000 payment made to them as non-conforming under the Settlement Agreement.
We find no authority in this jurisdiction for Stogdell and MAS's argument on this point. In this case, the Arbitration Award did not state that the Bachs would waive their right to the "time is of the essence" clause by accepting partial payment from Gheen. Further, there is no evidence in the record on appeal that the Bachs demonstrated any intent to waive that right. See First Trust, 24 Haw. at 784-85.

3. Result
Given the foregoing, and taking into consideration the well-settled principle that "equity abhors forfeitures," Converse v. James, 89 Hawai'i 461, 473, 974 P.2d 1051, 1063 (App. 1997), the circuit court did not err by failing to find that the Bachs waived their rights under the Settlement Agreement.

IV. CONCLUSION
The Final Judgment filed on June 18, 2007 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Bert A. Ayabe presided.
[2] HRS § 658A-22 provides that "[a]fter a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23."